Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| FINISAR CORPORATION, ROBERT N. STEPHENS, MICHAEL HURLSTON, MICHAEL C. CHILD, ROGER C. FERGUSON, THOMAS E. PARDUN, JERRY S. RAWLS, MICHAEL L. DREYER, and HELENE SIMONET, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

### NATURE OF THE ACTION

1.     This is a class action brought on behalf of the public stockholders of Finisar Corporation ("Finisar" or the "Company") against Finisar and the members of its Board of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Finisar will be acquired by II-VI Incorporated ("II-VI") through its wholly owned subsidiary, Mutation Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 9, 2018, Finisar and II-VI issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated November 8, 2018 (the "Merger Agreement") to sell Finisar to II-VI.  Under the terms of the Merger Agreement, for each share of Finisar common stock they own, Finisar stockholders may elect to receive, subject to proration: (i) $26.00 in cash ("Cash Consideration"); (ii) 0.5546 shares of II-VI common stock ("Stock Consideration"); or (iii) a combination of $15.60 in cash and 0.2218 shares of II-VI common stock ("Mixed Consideration," and together with the Cash Consideration and the Stock Consideration, the "Merger Consideration").  The Merger Consideration is subject to proration so that the aggregate consideration paid consists of approximately 60% cash and 40% II-VI common stock.   The Proposed Transaction has an equity value of approximately $3.2 billion.

3.     On December 28, 2018, Finisar filed a Preliminary Proxy Statement on Schedule 14A with the SEC and II-VI and Finisar filed a joint proxy statement/prospectus on Form S-4 (as amended on January 18, 2018, the "Registration Statement") with the SEC.  The Registration Statement, which recommends that Finisar stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses prepared by the Company's financial advisor, Barclays Capital Inc. ("Barclays") in connection with the rendering of its fairness opinion; (ii) Barclays' potential conflicts of interest; and (iii) Company insiders' potential conflicts of interest.

The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Finisar stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4.     In short, unless remedied, Finisar's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.   Finisar is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Finisar.

9.      Defendant Finisar is a Delaware corporation with its principal executive offices located at 1389 Moffett Park Drive, Sunnyvale, California 94089.  Finisar's common stock trades on the NASDAQ Global Select Market under the ticker symbol "FNSR."

10.      Defendant Robert N. Stephens ("Stephens") has been a director of the Company since August 2005.

11.      Defendant Michael Hurlston ("Hurlston") has been Chief Executive Officer ("CEO") and a director of the Company since January 2018.

12.      Defendant Michael C. Child ("Child") has been a director of the Company since June 2010.

13.      Defendant Roger C. Ferguson ("Ferguson") has been a director of the Company since August 1999.

14.      Defendant Thomas E. Pardun ("Pardun") has been a director of the Company since December 2009.

15.      Defendant Jerry S. Rawls ("Rawls") has been Chairman of the Board since 2006 and a director of the Company since 1989.  Defendant Rawls co-founded the Company and previously served as its President and CEO from 1989 to 2008.

16.      Defendant Michael L. Dreyer ("Dreyer") has been a director of the Company since 2015.

17.      Defendant Helene Simonet ("Simonet") has been a director of the Company since March 2017.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

18.     Defendants Stephens, Hurlston, Child, Ferguson, Pardun, Rawls, Dreyer and Simonet are collectively referred to herein as the "Board" or the "Individual Defendants."

**<u>OTHER RELEVANT ENTITIES</u>**

19.     II-VI is a Pennsylvania corporation with its principal executive offices located at 375 Saxonburg Boulevard, Saxonburg, Pennsylvania 16056.  II-VI's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "IIVI."

20.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of II-VI.

**<u>CLASS ACTION ALLEGATIONS</u>**

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Finisar common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of November 6, 2018, there were 117,385,367 shares of Finisar common stock outstanding.  All members of the Class may be identified from records maintained by Finisar or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and

- 5 -

Rule 14a-9 promulgated thereunder;

> (b)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

> (c)    Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.    Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.  Plaintiff has retained competent counsel experienced in litigation of this nature.

25.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

27.    Finisar is a global technology leader in optical communications, providing components and subsystems to networking equipment manufacturers, data center operators, telecom service providers, consumer electronics and automotive companies.  The Company designs products that meet the demands for network bandwidth, data storage and 3D sensing subsystems.  Finisar's optical subsystems consist primarily of transmitters, receivers, transceivers, transponders and active optical cables, which provide optical-electrical interface for interconnecting the electronic equipment used in these networks.

28.     Finisar also provides products known as wavelength selective switches ("WSS") that are used to dynamically switch network traffic from one optical fiber to multiple other fibers without first converting to an electronic signal.  This wavelength selective feature means that WSS enable any wavelength or combination of wavelengths to be switched from the input fiber to the output fibers.

29.     The Company has also entered the 3D Sensing market.  The 3D Sensing market includes features such as facial recognition, gaming and virtual reality.  Finisar designs and manufactures Vertical Cavity Surface Emitting Lasers, which are core to 3D Sensing.

30.     On September 6, 2018, Finisar announced its first quarter of fiscal 2019 financial results, reporting revenues of $317.3 million, compared to $310.1 million in the fourth quarter of fiscal 2018.  Defendant Hurlston commented on the quarter's financial results, stating:

> Revenues grew over the prior quarter and exceeded the mid-point of our guidance range, primarily driven by strength in demand for our wavelength selective switches. Gross margin also improved over the prior quarter and exceeded our guidance range due to favorable product mix. . . . In addition, we were able to accelerate the process of bringing more focus to our product development efforts, which allowed the company to reduce relative expense levels faster than expected. In combination, this led to better earnings per share, exceeding the high end of our guidance range.

31.     On November 9 2018, Finisar and II-VI issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> PITTSBURGH & SUNNYVALE, Calif., November 9, 2018 (GLOBE NEWSWIRE) – II-VI Incorporated (NASDAQ:IIVI), a global leader in engineered materials and optoelectronic components, and Finisar Corporation (NASDAQ: FNSR), a global technology leader in optical communications, today announced that they have entered into a definitive merger agreement under which II-VI will acquire Finisar in a cash and stock transaction with an equity value of approximately $3.2 billion.
>
> Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, Finisar's stockholders will receive, on a pro-rated basis, $15.60 per share in cash and 0.2218x shares of II-VI common stock, valued at $10.40 per share based on the closing price of II-VI's common stock of $46.88 on November 8, 2018. The transaction values Finisar at $26.00 per share, or approximately $3.2 billion in equity value and represents a premium of 37.7% to

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Finisar's closing price on November 8, 2018. Finisar shareholders would own approximately 31% of the combined company.

The combination of II-VI and Finisar would unite two innovative, industry leaders with complementary capabilities and cultures to form a formidable industry leading photonics and compound semiconductor company capable of serving the broad set of fast growing markets of communications, consumer electronics, military, industrial processing lasers, automotive semiconductor equipment and life sciences. Together, II-VI and Finisar will employ over 24,000 associates in 70 locations worldwide upon closing of the transaction.

"Disruptive megatrends driven by innovative uses of lasers and other engineered materials present huge growth opportunities for both of our companies," said Dr. Vincent D. Mattera, Jr., President and CEO, II-VI Incorporated. "In communications, materials processing, consumer electronics and automotive, we expect that the combination with Finisar will allow us to leverage our combined technology and intellectual property in InP, GaAs, SiC, GaN, SiP and diamond to achieve faster time to market, cost and scale. Together, we believe that we will be better strategically positioned to play a strong leadership role in the emerging markets of 5G, 3D sensing, cloud computing, electric and autonomous vehicles, and advanced microelectronics manufacturing."

Dr. Mattera continued, "We have long admired Finisar and have a great deal of regard for its founders and its talented global team. Our companies both have a long history of focusing on innovation, breakthrough solutions and competitive follow-through by manufacturing high quality products for our customers, and we look forward to welcoming Finisar to the II-VI family and further strengthening our competitive position in the industry."

"The combination of our state-of-the-art technology platforms, deep customer relationships, great assets and amazing talent will enhance our ability to hit market windows that won't stay open for long," said Michael Hurlston, Finisar's CEO. "This combination will accelerate our collective growth and will take advantage of the technology, products and manufacturing expertise that Finisar has uniquely developed over the course of its 30 year history."

Mr. Hurlston added, "We are extremely excited to combine Finisar with II-VI and together create a leader in photonics and compound semiconductors across all of the markets we serve. We are confident that the growth potential for the combined company is substantial, and we believe that our respective shareholders will be able to enjoy significant potential for value creation when the transaction is completed."

**Insiders' Interests in the Proposed Transaction**

32.     Finisar and II-VI insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.   The Board and the Company's executive officers are

conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Finisar.

33.     Notably, it appears that certain Company insiders have secured positions for themselves with the combined company.  For example, according to the Registration Statement, three members of the Board will be appointed to the board of directors of the combined company. Additionally, II-VI's May 3, 2018 proposal included an "expectation that members of Finisar's management team would have key leadership roles."  Registration Statement at 80.

34.     Further, Finisar directors and executive officers stand to reap substantial financial benefits for securing the deal with II-VI.  According to the Merger Agreement, all Finisar performance-based restricted stock units will vest and be converted into the form of Merger Consideration elected by the holder, and all Finisar stock options will be converted into the right to receive the Mixed Consideration.

35.     Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash Severance ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Tax Reimbursement ($)(4) | Total |
|---|---|---|---|---|---|
| Michael E. Hurlston | 2,205,000 | 6,502,875 | 54,182 | — | 8,762,057 |
| Joseph A. Young | 1,278,750 | 3,279,183 | 58,765 | — | 4,616,698 |
| Todd Swanson | 1,278,750 | 3,279,183 | 38,660 | — | 4,596,593 |
| Kurt Adzema | 1,237,500 | 2,714,926 | 54,849 | — | 4,007,275 |
| Julie S. Eng | 1,118,000 | 2,368,587 | 1,545 | — | 3,488,132 |

**The Registration Statement Contains Material Misstatements and Omissions**

36.     The defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Finisar's stockholders.  The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

37.     Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; (ii) Barclays' potential conflicts of interest; and (iii) Company insiders' conflicts of interest.  Accordingly, Finisar stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Barclays' Financial Analyses***

38.     The Registration Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Finisar's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Finisar's stockholders.

39.     In arriving at its fairness opinion, Barclays reviewed, among other things, "the pro forma impact of the proposed transaction on the future financial performance of the combined company, including cost savings, operating synergies, and other strategic benefits, expected by the management of the Finisar to result from a combination of the businesses (the "Expected Synergies")."  Registration Statement at 103.  Yet, the Registration Statement fails to disclose the Expected Synergies relied upon by Barclays in its analyses.

40.     With respect to Barclays' *Selected Comparable Company Analysis for Finisar*, the Registration Statement fails to disclose: (i) the individual multiples for each of the comparable

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

companies analyzed by Barclays; and (ii) any benchmarking analyses performed by Barclays to compare Finisar with the comparable companies.

41.     With respect to Barclays' *Selected Comparable Company Analysis for II-VI*, the Registration Statement fails to disclose: (i) the individual multiples for each of the comparable companies analyzed by Barclays; and (ii) any benchmarking analyses performed by Barclays to compare II-VI with the comparable companies.

42.     With respect to Barclays' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose: (i) the individual multiples for each of the transactions analyzed by Barclays; and (ii) any benchmarking analyses performed by Barclays to compare Finisar with the target companies of the transactions analyzed.

43.     With respect to Barclays' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rate range of 11.0% to 12.0%; (ii) the estimated terminal unlevered free cash flow for Finisar calculated based upon the Finisar Projections; (iii) Barclays' basis for applying a range of perpetual growth rates of 2.0% to 4.0%; (iv) Finisar's net debt as of July 29, 2018; and (v) the implied terminal multiples resulting from the analysis.

44.     With respect to Barclays' *Discounted Cash Flow Analysis for II-VI*, the Registration Statement fails to disclose: (i) quantification of the inputs and the assumptions underlying the discount rate range of 10.0% to 11.0%; (ii) the estimated terminal unlevered free cash flow for II-VI calculated based upon the Barclays Fairness Opinion II-VI projections; (iii) Barclays' basis for applying a range of perpetual growth rates of 2.0% to 4.0%; and (iv) the implied terminal multiples resulting from the analysis.

45.     The omission of this information renders the statements in the "Opinion of Finisar's Financial Advisor" and "Unaudited Prospective Financial Information" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Barclays' Potential Conflicts of Interest***

46.     The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by Barclays in serving as the Company's financial advisor.

47.     The Registration Statement sets forth:

> Barclays is acting as financial advisor to Finisar in connection with the proposed transaction. As compensation for its services in connection with the proposed transaction, Finisar will pay Barclays a fee for its services, $1.0 million of which was paid upon the delivery of Barclays' opinion, which is referred to as the "Opinion Fee." The Opinion Fee was not contingent upon the consummation of the proposed transaction. The remaining amount of the fee due to Barclays, which remaining amount is currently estimated at approximately $25.4 million, will be payable by Finisar on completion of the proposed transaction against which the amounts paid for the opinion will be credited. In addition, Finisar has agreed to reimburse Barclays for up to a specified amount of its reasonable and documented expenses incurred in connection with the proposed transaction and to indemnify Barclays for certain liabilities that may arise out of its engagement by Finisar and the rendering of Barclays' opinion. Barclays has performed various investment banking services for Finisar and II-VI in the past, and expects to perform such services in the future, and has received, and expects to receive, customary fees for such services. However, since January 1, 2015, Barclays has not earned any investment banking fees from either Finisar or II-VI.

> Barclays and its affiliates engage in a wide range of businesses from investment and commercial banking, lending, asset management and other financial and non-financial services. In the ordinary course of its business, Barclays and affiliates may actively trade and effect transactions in the equity, debt and/or other securities (and any derivatives thereof) and financial instruments (including loans and other obligations) of Finisar and II-VI for its own account and for the accounts of its customers and, accordingly, may at any time hold long or short positions and investments in such securities and financial instruments.

Registration Statement at 112.  The Registration Statement fails, however, to disclose whether Barclays has received compensation for any non-investment banking services performed for Finisar or II-VI in the past two years and the nature of these services.

48.     Full disclosure of all potential conflicts concerning investment bankers is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49.     The omission of this information renders the statements in the "Opinion of Finisar's Financial Advisor" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

50.     Further, the Registration Statement fails to disclose material information concerning the potential conflicts of interest faced by Finisar insiders.

51.     In the November 9, 2018 joint press release, II-VI's President and CEO Vincent D. Mattera ("Mattera") stated that "[w]e have long admired Finisar and have a great deal of regard for its founders and its talented global team.  Our companies both have a long history of focusing on innovation, breakthrough solutions and competitive follow-through by manufacturing high quality products for our customers, and we look forward to welcoming Finisar to the II-VI family and further strengthening our competitive position in the industry."

52.     The Registration Statement, however, fails to disclose whether any of Finisar's executive officers is continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between II-VI and Finisar's executive officers, including who participated in all such communications, when they occurred and their content.

53.     Additionally, the Registration Statement sets forth that, "[o]n May 3, 2018, Dr. Mattera met with Mr. Hurlston in BofA Merrill Lynch's office in Palo Alto, California and presented the II-VI proposal outlined above (the "May 3 Proposal")."  *Id*. at 80.  The May 3 Proposal included representation of the Finisar Board on the II-VI board commensurate with the

Finisar shareholders' pro forma ownership of the combined company and the expectation that members of Finisar's management team would have key leadership roles. *Id*. The Registration Statement fails, however, to disclose the specific members of Finisar's management team that were expected to have key leadership roles with the combined company and what these roles are.

54. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Finisar's Directors and Executive Officers in the Merger" sections of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

56. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

57. Plaintiff repeats all previous allegations as if set forth in full.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

58.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

59.     During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

60.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement.   The Registration Statement was prepared, reviewed, and/or disseminated by the defendants.   The Registration Statement misrepresented and/or omitted material facts, including material information about the valuation analyses prepared by the Company's financial advisor, Barclays' potential conflicts of interest, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

61.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made

available in the Registration Statement and in other information reasonably available to stockholders.

62.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

63.     Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Class Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

64.     Plaintiff repeats all previous allegations as if set forth in full.

65.     The Individual Defendants acted as controlling persons of Finisar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Finisar and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as

alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

68.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Registration Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Finisar, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Finisar stockholders;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1    D.      Awarding Plaintiff the costs of this action, including reasonable allowance for

2  Plaintiff's attorneys' and experts' fees; and

3    E.      Granting such other and further relief as this Court may deem just and proper.

4                                         **JURY DEMAND**

5          Plaintiff demands a trial by jury on all claims and issues so triable.

7  Dated: January 25, 2019                          **WEISSLAW LLP**

                                                     Joel E. Elkins

                                                     By:

                                                     Joel E. Elkins
                                                     9107 Wilshire Blvd., Suite 450
                                                     Beverly Hills, CA 90210
                                                     Telephone:  310/208-2800
                                                     Facsimile:   310/209-2348
                                                             -and-
                                                     Richard A. Acocelli
                                                     1500 Broadway, 16th Floor
                                                     New York, NY  10036
                                                     Telephone: 212/682-3025
                                                     Facsimile:  212/682-3010

                                                     *Attorneys for Plaintiff*